594 F.2d 614
 UNITED STATES of America ex rel. Lawrence WILLIAMS, Oscar
Southall, Bernard May and Emanuel Williams,
Petitioners-Appellees,
v.
Ernest MORRIS, Warden, Stateville Correctional Center,
Thaddeus E. Pinkney, Warden, Pontiac Correctional
Center, and People of the State of
Illinois, Respondents-Appellants.
 Nos. 78-1321, 78-1322, 78-1323 and 78-1380.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 3, 1978.
Decided March 13, 1979.
As Amended March 28, 1979.
Rehearing and Rehearing En Banc Denied April 17, 1979.
 
 Michael B. Weinstein, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.
 Martha M. Jenkins, Chicago, Ill., for petitioners-appellees.
 Before SPRECHER, BAUER and WOOD, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Four habeas corpus petitions arising out of pleas of guilty in accordance with plea agreements in state prosecutions have been consolidated on appeal. Judge Marshall granted the writs as to petitioners Lawrence Williams, Oscar Southall and Emanuel Williams.[1] Judge Flaum granted the writ as to petitioner Bernard May.
 
 
 2
 In the case of each petitioner a plea agreement was judicially accepted in which there was no mention of a statutory parole period required to be added to a term of imprisonment imposed for a felony conviction.[2] Likewise, in none of the cases did the state trial court at the time of the acceptance of the agreed plea specifically advise any petitioner of the mandatory parole addition to the sentence agreed to, or make any inquiry or determination of any petitioner's awareness of the requirement. Subsequently during the mandatory parole terms each petitioner violated parole which resulted in additional incarceration.
 
 
 3
 During the pendency of these proceedings changes of status occurred as to each petitioner. Three of the petitioners, May, Lawrence Williams, and Emanuel Williams, completed their entire sentences including the additional parole period. Petitioner Southall was discharged by state authorities in compliance with the order of the federal district court prior to the expiration of the additional parole period. At the request of this court the parties were asked to submit supplemental briefs on the issue of mootness. Petitioners and respondents are in agreement that none of the cases is moot. This court is of the same view. In the case of petitioner Southall, his unexpired mandatory parole term which extends beyond the date of this opinion might be reinstated. As to the other three petitioners no longer subject to the control of respondents, there remain collateral consequences which might have lingering effects since all were found guilty of violations of the mandatory parole. Those violations would remain upon their records with various possible adverse consequences. The situation is similar in principle to that considered in Carafas v. LaValle, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Further, we recognize that the issue raised is capable of repetition, yet may continue to evade review. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). It is obvious that because of the short terms often remaining in the mandatory parole terms that the same issue may be expected to be raised as to other petitioners similarly situated with doubtful expectations of resolution.
 
 
 4
 First, in each instance the respondents seek to find in the individual records some implication that might be viewed as satisfying the constitutional requirement found to exist in these circumstances in United States ex rel. Baker v. Finkbeiner, 551 F.2d 180 (7th Cir. 1977), Cert. denied, 435 U.S. 932, 98 S.Ct. 1508, 55 L.Ed.2d 530. See also United States ex rel. Ferris v. Finkbeiner, 551 F.2d 185 (7th Cir. 1977). In view of our disposition of this case, we need not reach that issue, nor the issue of whether or not Baker should be given retroactive application.
 
 
 5
 The controlling issue in our view is the application of 28 U.S.C. § 2254(b) and (c) requiring exhaustion of state remedies or a showing that those remedies are ineffective.[3] Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); Baldwin v. Lewis, 442 F.2d 29, 34-35 (7th Cir. 1971). Both district courts held that either there was no available state remedy or that it would be a futile exercise. In our view, petitioners failed in proving compliance with the exhaustion requirement or its futility. 442 F.2d at 35. We, however, believe there is a state remedy and are not so pessimistic about the consideration of this problem by the state courts of Illinois.
 
 
 6
 In our desire to resolve these problems affecting state prisoners, we must not lose sight of some fundamental considerations. In Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886), the first case to introduce the exhaustion doctrine before it became a statutory requirement, we were advised that our discretion in the exercise of federal habeas corpus power "should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." The court further made it the duty of all courts, federal and state, to follow principles and procedures to conciliate their independent tribunals in cooperation and harmony under the same Constitution. Id. at 252. 117 U.S. at 252, 6 S.Ct. 734. Age has not exhausted these underlying considerations of the exhaustion policy. The exhaustion requirement remains a "strong policy." Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).
 
 
 7
 The Attorney General of Illinois directs our attention to the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat., 1975, ch. 38, § 122-1, Et seq., as a state remedy available to all four petitioners. As none of the petitioners took direct appeals from their convictions, there is no issue of res judicata or waiver under the state rule. United States ex rel. Williams v. Brantley, 502 F.2d 1383, 1387 (7th Cir. 1974).
 
 
 8
 It is furthermore pointed out by the Attorney General that the Illinois Habeas Corpus Act, Ill.Rev.Stat., 1975, ch. 65, §§ 21(2) and 22(2) is available to all petitioners except May, as the other three have not attempted to avail themselves of that possible relief.[4] This state remedy is not unavailable merely because petitioners have already served the maximum sentence imposed. Eisen v. Zimmer, 254 Ill. 43, 98 N.E. 285 (1912); People ex rel. Harper v. Brantley, 34 Ill.App.3d 807, 341 N.E.2d 126, 127 (5th Dist.1975).
 
 
 9
 The Illinois Attorney General further argues that the courts in Illinois have not had an adequate opportunity to consider this court's 1977 decisions in Baker and Ferris and admonishes us that it "would seem somewhat presumptuous for this Court to conclude, as did the District Court, that based upon cases decided prior to Baker, Illinois courts would continue to dismiss claims raised after the Baker decision. In effect, this Court," the Attorney General argues, "would be put in the position of concluding that Illinois courts will doggedly insist that mandatory parole admonishments are not of a constitutional nature." We will consider the status of this issue under current Illinois law before presuming to be presumptuous as to the futility of seeking relief in the state courts. It would be "unseemly" as well. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).
 
 
 10
 During the period 1973 to 1975, all petitioners entered their pleas of guilty. At that time, as it does now, Illinois Supreme Court Rule 402 provided that in accepting pleas of guilty the court was required to inform the defendant, among other things, of the maximum sentence prescribed by law and to determine that the plea was being voluntarily made.[5]
 
 
 11
 Thereafter, on May 19, 1975, after the last of petitioners had entered his guilty plea the Supreme Court of Illinois decided People v. Wills, 61 Ill.2d 105, 330 N.E.2d 505 (1975), followed by a supplemental opinion on June 30, 1975. We must analyze those opinions to determine whether "the federal claim has been fairly presented to the state courts." Picard, supra at 275, 92 S.Ct. at 512. In Wills, the defendant claimed that at the time of his plea he was not admonished as to the mandatory parole provision. The appellate court found that the mandatory parole provision of the state statute was unconstitutional so that any failure to admonish defendant could not be error. In the Supreme Court of Illinois the defendant took the position that the act was constitutional but that his admonishment was insufficient. However, the Public Defender of Cook County, as amicus curiae, argued that the appellate court should be affirmed on the constitutional basis. The Supreme Court avoided the constitutional issue, and reversing People v. Krantz, 58 Ill.2d 187, 195, 317 N.E.2d 559 (1974), held that a defendant must be admonished about mandatory parole. Reversal was not required, the court found, because in that particular case other concurrent sentences imposed on defendant in which there was no failure to admonish were greater than the one in which the failure occurred. Upon the denial of petitions for rehearing the court elaborated on its prior opinion. On rehearing the defendant contended that as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968), he did not enter his plea "knowingly and voluntarily." The court concluded that the failure to admonish was a factor to be considered in determining voluntariness, but found that the record indicated an intelligent and voluntary entry of the plea. The court went on to make the holding requiring admonishment to be prospective only, not retroactive, using the same criteria previously established when a constitutional issue was involved, noting almost as an aside that there was a procedural, not constitutional, issue in the Wills case.
 
 
 12
 One of the district courts found that the new rule announced in Wills being prospective only, could be of no benefit to petitioners and concluded that petitioners were therefore without a remedy in state court.
 
 
 13
 However, we do not see that the precise constitutional issue which we are considering was specifically presented or finally resolved by Wills so as to render any further application to the courts of Illinois to be futile. The issue in Wills revolved around the Supreme Court's decision in Boykin. In Boykin the trial court had made no inquiry and no finding about the guilty plea. Mandatory parole was not involved. It was held not to have been an intelligent and voluntary plea overall. In Wills, as urged by the defendant, only that broad overall standard was applied. The particular issue was therefore not crystallized in Wills as it was squarely presented to us for specific resolution in Baker.[6]
 
 
 14
 Later in People v. Wenger, 42 Ill.App.3d 608, 611, 1 Ill.Dec. 306, 356 N.E.2d 432, 434 (4th Dist.1976), that court held that if a guilty plea rested on an " 'inaccurate representation as to the maximum penalty the promise implied in the representation should be fulfilled.' " Admonishment of mandatory parole was not an issue. In considering Wenger, one district court, recognizing that the Wenger theory supported petitioner, distinguished it upon the basis that Rule 402 specifically required that the defendant be advised of the maximum sentence prescribed by law, but not the mandatory parole term, as it predated Wills. However, the Wenger court held that the failure to warn the defendant as to the maximum sentence was of constitutional dimension properly raised by a postconviction petition and reversed the dismissal of the petition. Wenger relied in part on People v. Jackson, 13 Ill.App.3d 232, 300 N.E.2d 557 (1st Dist.1973). If the definition of maximum term of imprisonment is to be somehow restricted and interpreted to exclude mandatory parole with its attendant risks of additional incarceration, then it would be at most only a slight expansion to interpret mandatory parole as being within the provisions of Rule 402. Also, some other things have happened in Illinois courts since the district courts' consideration of this problem.
 
 
 15
 In an unreported decision that slight step was taken by the Circuit Court of the Eleventh Judicial Circuit, Livingston County, Illinois, People v. Guppey, Docket No. 74 CF 42 (1977). That court granted a petitioner relief for the court's failure to admonish him about the mandatory parole term.
 
 
 16
 There are also recent appellate decisions in Illinois unfavorable to petitioners. People v. Irons, 54 Ill.App.3d 50, 12 Ill.Dec. 61, 369 N.E.2d 558 (5th Dist.1977), is a recent example, but we note a dissent based on our holding in Baker. From the Fifth District, we are advised of People v. Reese, 66 Ill.App.3d 199, 22 Ill.Dec. 951, 383 N.E.2d 759 (1978), which considered the failure to admonish concerning the mandatory parole requirement and reversed the state trial court for relying on our Baker decision. The appellate court viewed Wills as controlling. We again note that there was also a dissent in this case.
 
 
 17
 The most recent case coming to our attention is from the Supreme Court of Illinois, People v. McCoy, 74 Ill.2d 398, 24 Ill.Dec. 555, 385 N.E.2d 696 (1979), which considered post-conviction relief sought for failure to admonish as to the mandatory parole requirement. The court held that in spite of that failure the plea was intelligently and voluntarily made under the facts of that case. The record revealed that the Quid pro quo for the guilty plea was the prosecutor's "recommendation" for concurrent sentences of one to three years. The defendant was aware that the court could disregard the recommendation and sentence him to the maximum of twenty years. The court did accept the recommendation but the mandatory parole term was added. The Illinois Supreme Court found no error since the sentence defendant received including the mandatory parole term was well within the maximum the court was free to impose and the defendant had reason to expect. Although not cited, the holding in McCoy is similar to our holding in Bachner v. United States, 517 F.2d 589 (7th Cir. 1975). McCoy considers our holdings in Baker and Ferris and properly distinguishes them on the basis that in Baker there was an agreement, and in Ferris the defendant was misinformed that he would not have to serve a mandatory parole term.
 
 
 18
 We view Illinois law, which first recognized the mandatory parole issue and took steps to correct it, as in a state of development with strong indications from McCoy that hopefully the federal and state courts are tending to agree so that these matters of the constitutional rights of state prisoners may be resolved by state courts without federal interference.
 
 
 19
 We therefore find that to require these petitioners, none of whom is presently in confinement, to resort to available state remedies is not an exercise in futility.
 
 
 20
 Reversed and remanded with directions to dismiss the petitions, but without prejudice in the event our expectations for some reason prove to be misguided.
 
 
 
 [1]
 The three cases decided by Judge Marshall were consolidated. United States ex rel. Williams v. Morris, 447 F.Supp. 95 (N.D.Ill.1978)
 
 
 [2]
 Section 5-8-1 of the Unified Code of Corrections (Ill.Rev.Stat.1973, ch. 38, par. 1005-8-1) provided in pertinent part:
 (a) A sentence of imprisonment for a felony shall be an indeterminate sentence set by the court under this Section.
 (e) Every indeterminate sentence shall include as though written therein a parole term in addition to the term of imprisonment. Subject to earlier termination under Section 3-3-8, the parole term shall be as follows:
 (2) for a Class 2 felony, . . . 3 years.
 
 
 [3]
 28 U.S.C. § 2254 provides in pertinent part:
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
 
 
 [4]
 Petitioner May's petition for state habeas relief was denied for reasons not appearing in this record by the Circuit Court of Cook County
 
 
 [5]
 Rule 402 provides in pertinent part:
 In hearings on pleas of guilty, there must be substantial compliance with the following:
 (a) Admonitions to Defendant. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
 (1) the nature of the charge;
 (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;
 (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and
 (4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him.
 (b) Determining Whether the Plea is Voluntary. The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea.
 (c) Determining Factual Basis for Plea. The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea.
 (d) Plea Discussions and Agreements. When there is a plea discussion or plea agreement, the following provisions, in addition to the preceding paragraphs of this rule, shall apply:
 (1) The trial judge shall not initiate plea discussions.
 (2) If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the trial judge may permit, upon request of the parties, the disclosure to him of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time he may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then indicate to the parties whether he will concur in the proposed disposition; and if he has not yet received evidence in aggravation or mitigation, he may indicate that his concurrence is conditional on that evidence being consistent with the representations made to him. If he has indicated his concurrence or conditional concurrence, he shall so state in open court at the time the agreement is stated as required by paragraph (b) of this rule. If the defendant thereupon pleads guilty, but the trial judge later withdraws his concurrence or conditional concurrence, he shall so advise the parties and then call upon the defendant either to affirm or to withdraw his plea of guilty. If the defendant thereupon withdraws his plea, the trial judge shall recuse himself.
 (3) If the parties have not sought or the trial judge has declined to give his concurrence or conditional concurrence to a plea agreement, he shall inform the defendant in open court at the time the agreement is stated as required by paragraph (b) of this rule that the court is not bound by the plea agreement, and that if the defendant persists in his plea the disposition may be different from that contemplated by the plea agreement.
 
 
 [6]
 The issue of exhaustion of state remedies was not considered in United States ex rel. Baker v. Finkbeiner, 551 F.2d 180 (7th Cir. 1977)