UNITED STATES of America ex rel.
Lawrence WILLIAMS, Petitioner,

v.

Ernest MORRIS, Warden, Stateville
Correctional Center, Respondent.

UNITED STATES of America ex rel.
Oscar SOUTHALL, Petitioner,

v.

Thaddeus E. PINCKNEY, Warden, Pontiac Correctional Center, Respondent.

UNITED STATES of America ex rel.
Emanuel WILLIAMS, Petitioner,

v.

PEOPLE OF the STATE OF
ILLINOIS, Respondent.

Nos. 77 C 2402, 77 C 2184 and 77
C 1937.

United States District Court,
N. D. Illinois, E. D.

Feb. 1, 1980.

Martha A. Mills, Chicago, Ill., for petitioners.

William J. Scott, Atty. Gen. of the State of Illinois and Michael B. Weinstein, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM DECISION

MARSHALL, District Judge.

These three habeas corpus petitions have been brought by inmates in Illinois state prisons. Petitioners, who pleaded guilty in their state court criminal prosecutions, contend that the state judges violated petitioners' Fourteenth Amendment rights by failing to inform petitioners of a mandatory parole term that would attach to their negotiated sentences. In *United States ex rel. Williams v. Morris*, 447 F.Supp. 95 (N.D. Ill.1978), we ruled that petitioners were entitled to relief. The Court of Appeals, in *United States ex rel. Williams v. Morris*, 594 F.2d 614 (7th Cir. 1979), reversed our decision, holding that petitioners had failed to exhaust an available state court remedy. Petitioners now renew their petitions seeking orders expunging their mandatory parole terms, contending that an Illinois Supreme Court ruling subsequent to the Court of Appeals' earlier decision conclusively shows the nonexistence of an available state court remedy. We agree with petitioners' contention and, accordingly, again grant the relief they seek.

In *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir. 1977), the Court of Appeals held that a state court violated a defendant's due process rights if the judge failed to advise a defendant pleading guilty pursuant to a plea agreement that a mandatory parole term would attach to his sentence. The court held that the mandatory parole term resulted in a substantially more onerous sentence than the defendant had been promised with the result that his plea had been unfairly induced in violation of the Fourteenth Amendment. The court held release from custody for a petitioner who was in prison for violating his parole term was the only adequate remedy, because vacation of the guilty plea would permit the state to reprosecute a defendant who had already performed his part of the bargain by serving the prison sentence which he had been promised. *See also United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185 (7th Cir. 1977) (involving incorrect admonition as to mandatory parole).

In our earlier *Williams* decision, we relied on *Baker* and held that petitioners, who had not been adequately advised of their mandatory parole, were entitled to habeas corpus relief. As a threshold matter, we decided whether petitioners should be required to exhaust a state remedy as a prerequisite to seeking relief in the federal courts. In *People v. Wills*, 61 Ill.2d 105, 330 N.E.2d 505 (1975), the Illinois Supreme Court had held that its Rule 402 required the trial judge to admonish a guilty pleading defendant as to a mandatory parole term that would attach to his sentence. In a supplemental opinion, the court held that the trial court's failure to so admonish would be a factor in determining whether the guilty plea was voluntary under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Finally, the court held that its decision

would apply prospectively to guilty pleas taken subsequent to May 19, 1975. Because all of the petitioners here had pleaded guilty prior to May 19, 1975, we held that *Wills* provided no benefit to petitioners. We further noted that all five Illinois appellate districts had denied relief in direct appeals of pre-May 19, 1975 guilty pleas by defendants challenging the trial court's failure to admonish them of mandatory parole terms. *See People v. Deckard*, 32 Ill.App.3d 497, 336 N.E.2d 614 (1975); *People v. Tate*, 37 Ill.App.3d 358, 346 N.E.2d 79 (1976); *People v. Stambor*, 33 Ill.App.3d 324, 337 N.E.2d 63 (1975); *People v. Giles*, 35 Ill. App.3d 514, 341 N.E.2d 410 (1976); *People v. Bosse*, 32 Ill.App.3d 422, 336 N.E.2d 216 (1975). We also cited two cases in which appellate courts refused to grant relief under the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, § 122–1 *et seq. See People v. Miller*, 36 Ill.App.3d 943, 344 N.E.2d 760 (1976); *People v. Cox*, 44 Ill. App.3d 945, 3 Ill.Dec. 628, 358 N.E.2d 1313 (1976). We further noted that failure to admonish is a nonjurisdictional defect not cognizable in a state habeas corpus proceeding. *People ex rel. Jenkins v. Department of Corrections*, 32 Ill.App.3d 147, 336 N.E.2d 385 (1975). Thus we held that Illinois law indicated that although the failure to advise a defendant of mandatory parole is

> [O]ne factor to be considered in determining whether a plea of guilty was voluntarily and intelligently made under constitutional standards, that omission alone is not of recognized constitutional dimensions in the Illinois courts.

447 F.Supp. at 98. Therefore we determined that petitioners need not exhaust state court remedies and were entitled to relief.

The Court of Appeals disagreed with our decision and reversed holding that petition-

ers had a state remedy. The court reasoned that the mandatory parole issue was not "crystallized" in *Wills* as it was in *Baker*, because the *Wills* court had simply applied the broad *Boykin* standard of voluntariness. 594 F.2d at 618. The Court of Appeals also cited *People v. Wenger*, 42 Ill.App.3d 608, 1 Ill.Dec. 306, 308, 356 N.E.2d 432, 434 (1976), in which the court held that if a guilty plea was based on an inaccurate representation of the maximum sentence, the promise implied in the representation should be fulfilled.[1] *Wenger*, according to the Court of Appeals, indicated that the Illinois courts might afford relief to petitioners improperly warned of a mandatory parole terms.[2] The court then noted two appellate decisions unfavorable to petitioners' theory for habeas relief, *People v. Irons*, 54 Ill.App.3d 50, 12 Ill.Dec. 61, 369 N.E.2d 558 (1977), and *People v. Reese*, 66 Ill.App.3d 199, 22 Ill. Dec. 951, 383 N.E.2d 759 (1978), but noted that dissents had been filed in both cases. Finally, the court cited *People v. McCoy*, 74 Ill.2d 398, 24 Ill.Dec. 555, 385 N.E.2d 696 (1979), in which the Illinois Supreme Court held that although the trial court failed to admonish as to mandatory parole, the guilty plea was voluntarily and intelligently made. The Supreme Court distinguished *Baker* because *McCoy* involved a recommended sentence rather than, as in *Baker*, an agreement as to a specific sentence.

From the foregoing cases, the Court of Appeals perceived a state of development in Illinois law "with strong indications from *McCoy* that hopefully the federal and state courts are tending to agree so that these matters of the constitutional rights of state prisoners may be resolved by state courts without federal interference." 594 F.2d at 619. The court reversed and remanded, with directions that we dismiss the instant petitions, but "without prejudice in the

---

1. In our opinion we had distinguished *Wenger*, noting that at the time of Wenger's guilty plea, Rule 402 specifically required a warning as to maximum sentence but did not require the warning as to mandatory parole that *Wills* would later impose. In light of this distinction and the string of Illinois appellate precedents holding the omission of warnings as to manda-

tory parole nonactionable, we refused to require exhaustion on the basis of *Wenger*.

2. The court also cited an unreported decision from the Eleventh Judicial Circuit, *People v. Guppey*, Docket No. 74 CF 2 (1977), in which an Illinois trial court granted relief for the failure to warn of mandatory parole.

event our expectations for some reason prove to be misguided." *Id.*

Petitioners now contend that the Court of Appeals' expectations have proven to be "misguided." After the Court of Appeals' decision, Martha Mills, Esq., counsel for petitioners here, filed with the Illinois Supreme Court a petition for leave to appeal on behalf of another state petitioner, David McCullom. The petition presented the mandatory parole issue and, citing the Court of Appeals' *Williams* decision, urged the Illinois Supreme Court to resolve the issue of the availability of a state remedy. On October 1, 1979 the Illinois Supreme Court denied the petition for leave to appeal. Petitioners claim that this denial, coupled with the numerous decisions rendered by Illinois appellate courts denying relief, establishes the absence of a state remedy. Respondents argue, however, that the denial of a petition for leave to appeal is equivalent to a denial by the United States Supreme Court of a petition for a writ of certiorari and indicates neither acceptance nor approval of the lower court's decision. Therefore respondents contend that Illinois law now stands in the same position as it did when the Court of Appeals decided *Williams*.

■ We agree with petitioners that the attempted exercise of a state remedy would be futile. When we wrote our original decision in this case, we noted that all five appellate districts in Illinois, before the Court of Appeals' *Baker* decision, found no constitutional issue in the failure to warn of a mandatory parole term. Now, with the benefit of *Baker's* reasoning, Illinois appellate courts in several decisions have nevertheless found no constitutional issue. *See, e. g. People v. Reese, supra; People v. Irons, supra; People v. Cosey,* 66 Ill.App.3d 670, 23 Ill.Dec. 459, 384 N.E.2d 95 (1978). The Supreme Court denied leave to appeal

in both *Reese* and *Irons*. Although all of these cases had been decided when the Court of Appeals rendered its *Williams* decision, we believe that the denial of leave to appeal in *McCullom* provides the necessary additional support for our original conclusion that no adequate state remedy exists. The *McCullom* petition made specific reference to *Williams* and the refusal of the Illinois appellate decisions to follow the principle established in *Baker,* and invited the Illinois Supreme Court to provide a definitive resolution as to the availability of a state remedy. The Supreme Court, however, declined to do so.

The Court of Appeals expressed its belief that Illinois law on this issue was in a state of development. If this is true, then we could reasonably expect the Supreme Court to reach the merits of a case in which the issue was squarely presented, especially when the petitioner before the Supreme Court discusses the Court of Appeals decision and the need for resolution of the conflict between the state and federal courts, which, the record here now shows, was done in the *McCullom* petition. Thus although the Supreme Court's denial of leave to appeal may not indicate the court's opinion of the merits of the case, we believe that the denial, coupled with the numerous appellate cases finding the failure to warn nonactionable and the denial of leave to appeal in *Irons* and *Reese,* indicates that no further development will take place in the Illinois courts with respect to this issue. The Court of Appeals based its hope for eventual agreement between the state and federal courts on cases which skirted the precise issue presented here. When the Illinois Supreme Court refuses to hear a case in which the issue is squarely presented, we can only conclude that the Court of Appeals' hopes have proven illusory.[3]

3. We also note that the Illinois Supreme Court has decided that a claim for release for failure to warn of mandatory parole is not cognizable in a writ of habeas corpus. *See Norman v. Elrod,* 76 Ill.2d 426, 427, 31 Ill.Dec. 725, 394 N.E.2d 1043 (1979). Although the court stated that its denial of a writ of habeas corpus was without prejudice as to petitioner's right to bring a post-conviction proceeding, the court's opinion cannot be read to indicate what the court's views would be on the merits of such a proceeding. Thus this opinion has no relationship to the issue of whether the petitioner's claims, which are clearly cognizable in a post-conviction proceeding, are nonactionable under Illinois law so as to make resort to the post-conviction procedure futile.

A contrary holding would require petitioners to continue to seek relief in the state courts, even though the appellate courts have consistently refused to grant relief and the Supreme Court has denied leave to appeal in cases presenting the issue. Such a holding would mean that the law with respect to this issue is in a perpetual state of development, with no real prospect of reaching maturation. We do not believe that the Court of Appeals anticipated such a result, nor do we believe that the Court of Appeals wishes petitioners to shuttle back and forth between the federal and state courts, merely to have the appellate court deny relief and the Supreme Court deny leave to appeal. *See United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1385 (7th Cir. 1974).

Although many of the cases denying relief were decided prior to *Baker*, the Illinois courts have had sufficient opportunity to interpret and apply the *Baker* holding. Moreover we note that in at least one other constitutional-criminal procedure context, the Illinois Supreme Court has held that it is not bound by any federal court decisions other than those of the Supreme Court. *See People v. Stansberry*, 47 Ill.2d 541, 268 N.E.2d 431, *cert. denied*, 404 U.S. 873, 92 S.Ct. 121, 30 L.Ed.2d 116 (1971), in which the Illinois Supreme Court refused to follow the Court of Appeals' decision in *United States ex rel. Pugh v. Pate*, 401 F.2d 6 (7th Cir. 1968) that search warrants issued pursuant to affidavits signed with fictitious names are void. Thus we hold no expectation that the Illinois Supreme Court or the lower courts in Illinois will follow the *Baker* rule. The Illinois courts found no constitutional issue in the failure to warn of mandatory parole prior to *Baker*, and both the Illinois appellate and supreme courts have had ample opportunity to apply *Baker* but have refused to do so.

We hold that the denial of leave to appeal in *McCullom*, when considered with the precedent from the appellate courts, demonstrates anew the futility of a state remedy. Accordingly, judgment will enter expunging petitioners' mandatory parole terms.