Steve HICKS, Petitioner,

v.

Kenneth G. OLIVER and Kansas Attorney General, Respondents.

No. 78–3048.

United States District Court, D. Kansas.

June 5, 1981.

Steven W. Kessler, Topeka, Kan., for petitioner.

Christopher Y. Meek, Asst. Atty. Gen., Topeka, Kan., for respondents.

## MEMORANDUM AND ORDER

THEIS, Chief Judge.

Petitioner herein, having been granted leave to proceed in forma pauperis, has filed with the Clerk of the Court this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. A rule to show cause issued, to which respondents filed an Answer and Return, followed by the filing of petitioner's Traverse thereto. Thereafter, an evidentiary hearing was conducted with petitioner present and represented by attorney Stephen W. Kessler, of Legal Services for Prisoners, Inc., an experienced and competent attorney, appointed by the Court. Having considered all pleadings, exhibits, and materials filed, together with the testimony and other evidence presented at the hearing, the Court makes the following findings and Order.

The undisputed facts are that on April 17, 1972, Hicks was convicted in the District Court of Wyandotte County, Kansas, upon his plea of *nolo contendere* to the charge of first degree murder, in violation of K.S.A.

§§ 21–3426 and 21–3401, in connection with the October 22, 1971, shooting death of a liquor store attendant. The killing occurred during the robbery of the liquor store. Petitioner, 18 years old at the time, was represented by appointed counsel, Anthony Russo, Kansas City, Kansas, who had advised Hicks, and was present when the plea was entered and accepted. This was Hicks' first felony conviction. Prior to accepting his plea, the Court informed him that the maximum sentence which could be imposed was death by hanging, and that he had the right to have his guilt determined beyond a reasonable doubt by a jury. Hicks entered a plea of *nolo contendere*, and was sentenced to life imprisonment. The Court did not discuss parole eligibility at the plea proceeding.

Petitioner contends that he was not fully informed of the consequences of his plea. In support of this contention he alleges that the attorney who represented him during the state criminal proceedings misinformed him that, as a first offender and under the age of 21 years, he would become eligible for parole in sixteen months. However, petitioner was later informed that the applicable Kansas law had been construed so that he was not eligible for parole until he had served fifteen years of his sentence. Petitioner further alleges that he relied upon the misinformation in making his decision to plead guilty, and that as a consequence his plea was not knowingly and intelligently made, and was therefore involuntary. On this basis, the Court is asked to allow petitioner to withdraw his plea, vacate the conviction, and order his release.

In the Answer and Return, respondents explain the contemporaneous circumstances which led to confusion with regard to the date of petitioner's eligibility for parole. At the time his sentence was imposed, petitioner's parole eligibility was governed by K.S.A. § 22–3717, which provided in pertinent part:

"(2) Persons confined in institutions shall be eligible for parole (a) after fifteen years if sentenced to life imprisonment or to a minimum term which, after deduc-

tion of work and good behavior credits, aggregates more than 15 years; (b) after 16 months if sentenced pursuant to conviction for a first offense to a minimum term which, after work and good behavior credits, aggregates more than 16 months, and the person sentenced is under 21 years of age at the time of sentence."

This statute, repealed in 1974, was ambiguous as to whether subsection (2)(b), which determined the eligibility of youthful first offenders, applied to one who received a life sentence. It is obvious that at the time of the plea proceeding, the law could reasonably have been read to provide that petitioner would be eligible for parole after service of either sixteen months or fifteen years.

Apparently, after petitioner began serving his sentence, he applied for release on parole, but the Kansas Adult Authority determined that he was not eligible for immediate consideration. Petitioner then objected to this determination with the result that the Parole Authority requested an advisory opinion from the Kansas Attorney General as to his parole eligibility date under § 22–3717. The Attorney General opined that subsection (2)(b) did not apply to a person sentenced to life imprisonment even though he was a youthful first offender, for the reason that subsection 2(a) governed the parole eligibility of any offender sentenced to life imprisonment.

In seeking to overturn the plea, counsel for petitioner argued that the length of time one must serve before he is eligible for parole is a consequence of which a person entering a plea should be informed. He urged that, at least, when commonly known parole provisions applicable in the usual case do not apply, a defendant must be informed of the exceptional parole eligibility terms. It was further argued that the facts, as alleged, evince a fundamental error in the state process which has resulted in a complete miscarriage of justice.

The Court has found this to be a very difficult case. However, he has concluded that petitioner is not entitled to federal

habeas corpus relief for the following reasons.

■ At the outset, the Court rejects petitioner's argument that the judge receiving his plea was required to inform him of the date he would become eligible for parole. In support of this proposition, petitioner cites cases dealing with special mandatory parole terms or ineligibility for parole.

The cases cited by petitioner dealing with special parole are inapposite here. This is not a case where petitioner pleaded guilty to a violation of the federal narcotics laws, or similar state statutes without being informed of explicit, corollary provisions for mandatory special parole. See, e. g., *United States v. Hamilton*, 553 F.2d 63 (10th Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977); *United States v. Sisneros*, 599 F.2d 946 (10th Cir. 1979); *Williams v. Morris*, 483 F.Supp. 775 (N.D.Ill.1980), *modified*, 633 F.2d 71 (7th Cir.). Special parole is in addition to any other parole; is in effect only after the prison sentence has been served and regular parole has expired; and if revoked, the original term of imprisonment is increased by the period of special parole. *Bell v. United States*, 521 F.2d 713 (4th Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *Lewis v. United States*, 601 F.2d 1100 (9th Cir. 1979). We deal here with discretionary rather than mandatory special parole.

Furthermore, even if this case were analogous to the special parole decisions, no relief would be warranted. Courts may grant relief in the instance of failure to inform of a special parole term only where the total custodial time, that is, the sentence plus the special parole term actually imposed, exceeds the maximum possible sentence which the court told the defendant he might receive. *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *United States v. Eaton*, 579 F.2d 1181 (10th Cir. 1978). The sentence imposed in this case was less than the maximum possible sentence of which petitioner was advised.

While contemporary authority encourages the advisement of a mandatory special parole term prior to acceptance of a plea, this Court is aware of no convincing authority requiring that a defendant be informed of a discretionary parole eligibility plan, even one which is exceptionally, rather than generally, applicable.

This is also not a case where petitioner pleaded unaware that he would be ineligible for parole throughout his term. Courts have overturned pleas on the basis of the court's failure to inform a defendant of total parole ineligibility arising from a unique statutory provision. See *Moody v. United States*, 469 F.2d 705 (and cases cited therein at 707), (8th Cir. 1972); *Jenkins v. United States*, 420 F.2d 433 (10th Cir. 1970); *Munich v. United States*, 337 F.2d 356 (9th Cir. 1964); but cf., *Wacht v. Cardwell*, 604 F.2d 1245 (9th Cir. 1979). On the other hand, relief has been denied when the ineligibility results from application of the guidelines used by the United States Parole Commission to calculate likelihood of success on parole. *United States v. Glaze*, No. 78–1991 (10th Cir. July 5, 1979, unpublished). In the present case, petitioner is not ineligible for parole. He merely claims to have been unaware of the minimum time he would be required to serve prior to becoming eligible for parole. It follows that cases concerning total ineligibility are distinguishable. *Bell v. State of North Carolina*, 576 F.2d 564 (4th Cir. 1978), *cert. denied*, 439 U.S. 956, 99 S.Ct. 356, 58 L.Ed.2d 348.

It has repeatedly been held that potential parole eligibility is such an indirect and collateral consequence that a defendant need not be informed of it prior to entering a plea. *Hunter v. Fogg*, 616 F.2d 55 (2d Cir. 1980); *Robinson v. Israel*, 603 F.2d 635 (7th Cir. 1979), *cert. denied sub nom Robinson v. Wolff*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980); *Johnson v. Dees*, 581 F.2d 1166 (5th Cir. 1978); *Bell v. State of North Carolina*, supra; see also, *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979). Most of the cases so holding involved pleas of guilty taken in federal court under the procedures set forth in Rule 11(c), Federal Rules of Criminal Procedure. Rule 11 sensibly requires that a defendant be informed

of any mandatory minimum sentencing provision, but does not mandate advisement of the minimum portion of a sentence that might have to be served prior to possible parole. *Hunter v. Fogg*, supra. The Court cannot, under the auspices of federal constitutional law, apply to a state judge taking a plea, a higher standard than Rule 11 prescribes for a federal district judge performing the same function. *Hunter v. Fogg*, supra, citing *Kelleher v. Henderson*, 531 F.2d 78, 82 (2d Cir. 1976). Thus, it is clear that under extant case law, the voluntariness of a plea is not thought to be undermined by the Court's failure to inform a defendant of the minimum period of confinement he must serve prior to parole eligibility. Accordingly, we hold that the fact that the judge in this case did not inform petitioner concerning his potential parole eligibility does not entitle petitioner to withdraw his plea.

Having found that petitioner's being uninformed as to his potential parole eligibility does not invalidate his plea, we now turn to his claim that he was misinformed by his attorney as to this consequence.

▇ For purposes of determining whether a plea is voluntary and intelligent, in spite of misinformation given to a defendant, there is no constitutional distinction between a guilty plea and a plea of *nolo contendere*. *Manley v. United States*, 588 F.2d 79 (4th Cir. 1978). See also, *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). Under the laws of the State of Kansas, a criminal defendant who does not wish to plead guilty has the alternative of pleading *nolo contendere*. K.S.A. § 22–3209(2), provides:

> "A plea of *nolo contendere* is a formal declaration that the defendant does not contest the charge. When a plea of *nolo contendere* is accepted by the court, a finding of guilty may be adjudged thereon. The plea cannot be used against the defendant as an admission in any other action based on the same act."

Literally, *nolo contendere* means, "I will not contest it." Such a plea is used primarily to avoid civil sanctions and other liabilities which might attend a plea of guilty. Lastelic, *Pleas of Guilty*, 18 K.L.R. 730 (1970). With respect to the case in which it is entered, it has the same effect as a guilty plea. *Zebelman v. United States*, 339 F.2d 484 (10th Cir. 1964). It is an admission of every essential element of the offense well-pleaded in the charge, and is tantamount to an admission of guilt. *Lott v. United States*, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961); *Zebelman v. United States*, supra. The legal effect of a plea of *nolo contendere* is as conclusive as to the guilt of defendant as a plea of guilty. *Carnes v. United States*, 279 F.2d 378 (10th Cir. 1960), *cert. denied*, 364 U.S. 846, 81 S.Ct. 88, 5 L.Ed.2d 69; *United States v. L'Aquarius*, 418 F.Supp. 887 (D.Okl.1976); see also, *United States v. Williams*, 642 F.2d 136 (5th Cir. 1981).

▇ It is clear from our review of the relevant case law that counsel error in advising a criminal defendant as to a consequence of his plea does not, without more, require vacation of the plea. See, e. g., *Criser v. United States*, 319 F.2d 849, 850 (10th Cir. 1973); *Warren v. Marion*, 465 F.Supp. 303 (E.D.N.C.1978); *United States v. Clark*, 429 F.Supp. 89 (W.D.Okla.1976). This proposition is apparent from the holding of the United States Supreme Court that the vulnerability of a plea does not depend "on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1972); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). After contemplating the cases dealing with guilty pleas following misadvice of counsel, together with the cases holding that criminal defendants need not be informed of collateral consequences such as potential parole eligibility, it appears that an exception to the collateral consequence rule has been recognized when the representation provided by counsel sup-

plying the misadvice has been constitutionally inadequate. *Strader v. Garrison*, supra; *Hill v. Ternullo*, 510 F.2d 844 (2d Cir. 1975); *Hammond v. United States*, 528 F.2d 15 (4th Cir. 1975).

Recently, relief was granted under this exception in *Strader v. Garrison*, supra. There, due to misadvice of counsel, the defendant entered his plea believing that his parole eligibility date would be several years sooner than state regulations permitted. The Court found that the facts of the case clearly evinced ineffective assistance of counsel in that the lawyer could have discovered the applicable rule had he simply looked in the published regulations of the North Carolina Department of Corrections. The Court noted the ordinary rule that parole eligibility is a collateral consequence of which a defendant need not be advised, but found the rule inapplicable in the case of gross misadvice of counsel. The Court also distinguished two earlier cases applying the collateral consequence rule to a claim of misadvice as "aberrations" and noted that "in neither case was the problem approached in terms of the constitutional entitlement to the effective assistance of counsel." *Id.* at 64. In *Strader*, federal habeas corpus relief was granted on the ground that the advice given was so incompetent as to have deprived the defendant of his right to effective assistance of counsel under the Sixth Amendment. In accord: *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979).

■ In the case before this Court, we have equally gross misinformation. The span between sixteen months and fifteen years is vast. However, we are not presented with any evidence or even an allegation of ineffective assistance of defense counsel. Nor do we believe that the facts would support such a claim. The statute which governed parole eligibility and upon which counsel based his advice was clearly ambiguous and could arguably have been interpreted to provide that Hicks would be eligible for parole in sixteen months. There is simply no basis for a holding that the representation afforded by

counsel fell "below the minimum standard of reasonable skill and competence expected of a defense attorney in a criminal case." See *Dyer v. Crisp*, 613 F.2d 275 (10th Cir. 1980), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779; *Carter v. Gagnon*, 495 F.Supp. 878 (E.D.Wisc.1980). Consequently, this Court cannot hold that petitioner is entitled to relief on the basis of gross misadvice amounting to a denial of rights under the Sixth Amendment.

The later cases cited herein, which grant relief on the basis of ineffective assistance of counsel, abbreviate the analytical method for determining the validity of a guilty plea established in earlier United States Supreme Court opinions. In 1969, the Supreme Court applied certain procedural mandates to the taking of guilty pleas in federal court which were thereafter codified in Rule 11, Federal Rules of Criminal Procedure. See *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Nearly identical procedural mandates were applied to state courts two months later in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). However, the showing of a technical violation of these procedural mandates without more does not subject a conviction based on a guilty plea to collateral attack. *United States v. Timmreck*, supra. In this case, we are not presented with a formal violation of the procedures for taking state guilty pleas since we have found that the disclosure of the date of eligibility for discretionary parole is not required by either federal or state law. We have further found that petitioner is not entitled to relief under more recent case law in which pleas have been overturned for failure to inform of mandatory special parole as well as statutory ineligibility, or on the ground of incompetency of counsel.

None of the more recent cases contains a significant discussion of the federal constitutional precepts previously developed for determining the voluntariness of a plea. The Court in *Strader*, simply stated that "it seems enough to say . . . that the assistance of counsel was so ineffective as to amount

to a denial of the constitutional right to counsel." 611 F.2d at 64. The plea entered in this case is not invalid under the traditional standard.

■ Three decisions of the United States Supreme Court known as "The *Brady* Trilogy," announced the general standard that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, supra; *Parker v. North Carolina*, supra. Under this rule a criminal defendant is precluded from raising constitutional claims which antedated his plea in federal habeas corpus proceedings. This principle was reaffirmed in *Tollett v. Henderson*, supra. If a defendant pleads guilty on the advice of counsel, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea, but may only attack the voluntary and intelligent character of the plea by demonstrating that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, supra, 397 U.S. at 777, 90 S.Ct. at 1452; *Tollett v. Henderson*, supra, 411 U.S. at 267, 93 S.Ct. at 1608.

Even though "The *Brady* Trilogy" dealt with pleas of guilty, the Court finds the reasoning equally applicable to pleas of *nolo contendere*. This is so because, as discussed earlier, a plea of *nolo contendere* has the same conclusive legal effect with respect to the case in which it is entered as a plea of guilty.

■ Before a plea of either guilty or *nolo contendere* may be accepted in a Kansas court, defendant must have entered such plea in open court; and the court must have informed defendant of the consequences of his plea, of the maximum penalty provided by law which may be imposed, addressed the defendant personally to determine that the plea is made voluntarily and knowingly, and be satisfied that there is a factual basis for the plea. K.S.A. § 22–3210; see also, *Boykin v. Alabama*, supra.

The arraignment, plea and sentence of Steve Hicks took place on April 17, 1972. The transcript of proceedings indicates that in open court the amended information was read, the defendant was informed that the maximum penalty he might receive was death by hanging, and was asked how he desired to plead. Hicks' attorney responded that the defendant wished to enter a plea of *nolo contendere*. The Court ascertained that Hicks had received satisfactory representation by counsel throughout the proceedings, and that the plea was voluntarily entered. The Court further determined that defendant understood that he was waiving his right to trial by jury and to have the State prove the charge beyond any reasonable doubt. The Court then proceeded to hear evidence from three witnesses for the State and received exhibits including the Coroner's Report and Hicks' signed confession. At the conclusion of the proceedings, the Court found beyond a reasonable doubt that the crime charged in the amended information had been committed and that defendant was guilty of that crime. The Court then sentenced Hicks to life imprisonment.

Where, as in this case, the state court has satisfied itself that a factual basis for the plea exists and a finding of guilty is adjudged thereon, the plea of *nolo contendere* is tantamount to an admission of factual guilt as reliable as a plea of guilty. Thus, the thrust of the guilty plea cases, as explained in a later Supreme Court case, applies here:

"The point of these cases is that a counselled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established."

*Menna v. New York*, 423 U.S. 61, 62, n. 2, 96 S.Ct. 241, 242, n. 2, 46 L.Ed.2d 195 (1975). Petitioner's factual guilt was plainly established at the plea proceeding and the occurrence of the claimed violation is not, in any way, inconsistent with that valid establishment of factual guilt. See *Mitchell v. Superior Ct. for City of Santa Clara*, 632 F.2d 767 (9th Cir. 1980).

Moreover, as noted earlier, a person complaining of an antecedent violation is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the plea, through proof that the advice received from counsel was not "within the range of competence demanded of attorneys in criminal cases." We have already noted that no evidence has been proffered to indicate that defense counsel was incompetent. Thus, it is clear that petitioner is not entitled to relief under the rule set forth in "The *Brady* Trilogy."

It is also clear that relief is not available to Hicks under the exceptional cases in which pleas have been overturned subsequent to the trilogy and its progeny. Petitioner is not complaining that he has already been prosecuted for the same offense on a misdemeanor charge, as was the complaint in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). Nor does this case deal with the unique New York statutory provision which required an exceptional holding in *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). Furthermore, we do not deal here with a double jeopardy claim which was the basis for distinguishing *Tollett v. Henderson*, supra, in *Menna v. New York*, supra.

Indeed, this case is much more analogous to the trilogy cases than to their exceptions. For example, in *Brady v. United States*, supra, the defendant decided to plead guilty after learning that his confederate would do so and sought relief when a subsequent Supreme Court decision held the death penalty provision of the statute under which he was convicted to be unconstitutional because it applied only to those defendants who chose to exercise their rights to trial by jury. *Brady* contended that fear of the death penalty was a factor in his plea, and that his counsel had advised him that the statute empowered a jury to impose the death penalty, when nine years later the Supreme Court held that the jury had no such power. However, the Court held that these facts did not require the setting aside of Brady's conviction. The Court's reasoning is pertinent here:

"Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. *Von Moltke v. Gillies*, 332 U.S. 708 [68 S.Ct. 316, 92 L.Ed. 309] (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question

was less than was reasonably assumed at the time the plea was entered.

The fact that Brady did not anticipate *United States v. Jackson*, supra, does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." (397 U.S. at 756–757, 90 S.Ct. at 1473, footnotes omitted.)

This case is also similar in some respects to *McMann v. Richardson*, supra, where the defendants pleaded guilty, on advice of counsel, and later challenged their pleas as being motivated by prior coerced confessions which were mistakenly assessed as admissible by their attorneys. The Court denied relief under the following rationale:

"Waiving trial entails the inherent risk that the good faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to the particular facts. That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty.

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession."

397 U.S. at 770, 90 S.Ct. at 1448; *Parker v. North Carolina*, supra. The Court opined that defense counsel could not be faulted for not anticipating *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), or for considering the extant New York procedures to be valid, and further stated in *McMann v. Richardson*, supra, 397 U.S. at 774, 90 S.Ct. at 1450:

"It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act."

As discussed previously herein, the advice received by petitioner in this case from his defense attorney was well within the range of competence required of attorneys representing defendants in criminal cases. Thus, Hicks' plea was intelligent and not open to attack on the ground that counsel misconstrued the parole statute.

It is apparent from the record that petitioner's attorney had advised him to plead guilty upon his appraisal of the strength of the prosecution's case and by the likelihood of avoidance of the death penalty should a guilty plea be offered and accepted. Under the reasoning of *Brady* and *Parker*, the fact that petitioner and his attorney did not anticipate the Attorney General's opinion unfavorably construing the parole statute does not impugn the truth or reliability of petitioner's plea. Accordingly, the Court concludes by the standard enunciated in "The *Brady* Trilogy" and its progeny, that petitioner's plea was voluntarily and intelligently made with adequate advice of counsel.

■ The final theory advanced by petitioner is that the misinformation provided by defense counsel resulted in fundamental error and a complete miscarriage of justice. Courts utilizing this standard in testing a state guilty plea preceded by misadvice have inquired whether the defendant was aware of actual sentencing possibilities and, if not, whether accurate information would have made a difference in his decision to enter a plea. *Hunter v. Fogg*, supra; *United States v. Scott*, 625 F.2d 623 (5th Cir. 1980); *Williams v. Smith*, 591 F.2d 169 (2d Cir. 1979), *cert. denied*, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 289; *Guerrero v. Harris*, 461 F.Supp. 583 (S.D.N.Y.1978); see also, *Allen v. United States*, 634 F.2d 316 (5th Cir. 1981); *Wacht v. Cardwell*, supra.

Here, petitioner alleges that accurate information *might* have made a difference in his plea. However, the Court finds from the testimony and evidence collected in this habeas corpus proceeding, that petitioner was motivated to plead *nolo contendere* by the strength of the case against him, and by his fear of the death penalty; and that there was little, if any, chance that correct information concerning potential parole eligibility would have caused him to plead differently. The record shows that petitioner was correctly informed of the maximum sentence he might receive and that a factual basis for the plea existed. At the evidentiary hearing before this Court, petitioner stated that defense counsel Russo had correctly advised him that if he did not plead guilty the maximum possible penalty was death by hanging, and that if he did plead guilty he would avoid the death penalty. Petitioner further testified that he was fearful of receiving the death penalty should he not plead guilty. The affidavit of petitioner's mother is exhibited in which she avers that Russo advised petitioner to enter a plea of guilty or *nolo contendere* if the State agreed to recommend that the penalty of death not be imposed. Thus, the Court finds as a matter of fact that avoidance of the death penalty was the most significant factor in petitioner's decision to plead *nolo contendere*.

The error alleged by petitioner is neither jurisdictional nor constitutional. Within the facts of this case, it cannot be deemed a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure. It is therefore concluded that petitioner's claim does not present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *United States v. Timmreck*, 441 U.S. at 780, 99 S.Ct. at 2085; *United States v. Hamilton*, supra.

In sum, the Court finds that under existing law there is no exception to the collateral consequence rule for discretionary parole and that misinformation concerning this collateral consequence does not invalidate a competently counseled plea of *nolo contendere*. These findings are in harmony with the philosophy of the Supreme Court expressed in the proceeding passages:

> "The concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas. 'Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.' *United States v. Smith*, 440 F.2d 521, 528–29 (7 Cir.) (Stevens, J., dissenting)."

*United States v. Timmreck*, 441 U.S. at 784, 99 S.Ct. at 2087; see also, Bishop, *Federal Habeas Corpus in State Guilty Pleas*, 71 F.R.D. 235, 282 (1977); *Rule 11 and Collateral Attack on Guilty Pleas*, 86 Yale L.J. 1395 (1977).

In *Brady v. United States,* supra, 397 U.S. at 758, 90 S.Ct. at 1474, the following appears:

"We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crimes with which they are charged. In the case before us, nothing in the record impeaches Brady's plea or suggests that his admissions in open court were anything but the truth."

■ As a second claim for relief, petitioner alleges that the sentencing judge did not explain the elements of the murder offense prior to accepting his plea. The record clearly refutes this allegation. The transcript demonstrates that the amended information charging petitioner with felony murder was read to petitioner at the beginning of the plea proceeding and that the Court received a negative response when he inquired if the defendant wished to be heard from. Moreover, petitioner was represented by counsel at this proceeding and stated that he was satisfied with that representation. These record facts are not disputed and demonstrate that petitioner was sufficiently informed as to the elements of the offense before entering his plea. See *United States v. Dayton,* 604 F.2d 931 (5th Cir. 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

From the foregoing, the Court concludes that petitioner is not entitled to federal habeas corpus relief on the claims alleged in his petition.

IT IS THEREFORE ORDERED that this action be dismissed and all relief denied. The Clerk shall transmit copies of this order to petitioner, to counsel for petitioner, and to the office of the Attorney General for the State of Kansas.